United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

════════════════

No. 3:20-cv-116

════════════════

ERIC DEMOND LOZANO, TDCJ #01915276, PLAINTIFF, PLAINTIFF,

v.

TAMMIE JEFFERSON, *ET AL.*, DEFENDANTS.

════════════════════════════════

## MEMORANDUM OPINION AND ORDER

════════════════════════════════

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The plaintiff, Eric Demond Lozano, is currently incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ) at the LeBlanc Unit. Lozano filed a civil-rights complaint under 42 U.S.C. § 1983 against several TDCJ officers at the Stringfellow Unit in Rosharon, where he was previously confined. Lozano represents himself and proceeds *in forma pauperis*.

The remaining defendants—Tammie Jefferson, Leonard Jones, Shawn Garza, and Felix Gordon—have moved for summary judgment. Dkt. 34. Lozano has not filed a response, and the deadline to do so has expired. Having considered the motion, the applicable law, and the record, the court grants the motion and dismisses this case.

1/ 27

## I.   BACKGROUND

### A.   Chronology of Lozano's Claims

In May 2015, Lozano purchased a fan with funds he received from an outside organization that gives money to indigent inmates for this purpose. Dkt. 1 at 22. At some point, the fan stopped working. *Id.* In hopes of procuring a new fan, Lozano explains:

> So I had a Muslim brother that worked in the property room. I asked him to give me an indigent fan. He did and non[e] of this was documented. I took a fan until I could try an[d] get a new fan from somebody that was paroling out of the system. The fan stopped working on 8/25/2019.

*Id.*[1]

Lozano takes a number of medications that make him sensitive to the heat and he is identified by TDCJ as having medical conditions that prohibit him from working in extreme temperatures. *See* Dkt. 10 at 5. His dorm at the Stringfellow Unit was not air conditioned. Dkt. 1 at 13, 22.

On August 26, 2019—the day after his fan stopped working—Lozano requested a fan from Jefferson, who is a property officer at the Stringfellow Unit.[2] Dkt. 1 at 22; Dkt. 10 at 6. Jefferson replied that she did not have any fans and that

---

[1] Throughout this memorandum opinion, the court's citations to specific pages in the record refer to the pagination of docket entries on the court's electronic case-filing (ECF) system.

[2] Lozano states that TDCJ policy allows the "permanent issue of a fan to an indigent offender on a first come first serve basis. An offender who has a significant medical need, based on a condition or medication that is negatively impacted by heat, must be given priority." Dkt. 1 at 24.

he was "out of luck." Dkt. 1 at 22; Dkt. 10 at 6.

On August 30, Lozano met with Captain Jones, whom Lozano describes as being "over the heat[-]related issues" at the Stringfellow Unit, about getting a new fan. Dkt. 10 at 8; *see also* Dkt. 1 at 23. Lozano alleges that Jones's "job is to follow policy AD 10.64 (Heat Related Policy)" and that he is "suppose[d] to make sure that every indigent inmate [has a] fan[]." Dkt. 10 at 9. Lozano told Jones that he is heat-restricted and takes certain medications that can cause heat-related injuries. *Id.* at 8. Jones replied that there were currently no fans in the property office. *Id.* at 9. Lozano alleges that Jones refused to get him a fan or to speak to his supervisors about getting him a fan. Dkt. 10 at 9.

On September 1, Lozano filed a Step One grievance about Officer Jefferson and Captain Jones's refusal to give him a fan. *See* Dkt. 10 at 9, 26; *see also* Dkt. 1-6 at 13–14. Lozano also told Jefferson and Jones that he would be filing a "1983 lawsuit in the coming future" for not providing him with a fan and that this made them upset with him. *See* Dkt. 1 at 26; Dkt. 13 at 4; Dkt. 17 at 2, 4. Lozano again requested a fan from Jefferson on September 3 and 4. Dkt. 10 at 6.

Around September 6, Lozano sent a letter to TDCJ Director Bryan Collier about Jefferson and Jones "denying" him a fan. *Id.* at 4, 7, 9; Dkt. 13 at 3. On September 24, a TDCJ officer called Lozano into his office to investigate the letter. Dkt. 10 at 4, 9; Dkt. 13 at 3–4. The officer told Lozano that he would get a fan the next day. *See* Dkt. 10 at 9. On September 25, Lozano was given a fan by Officer

3/ 27

Jefferson. *See id.*; Dkt. 13 at 4; Dkt. 1 at 25. Lozano asserts that during the period that his fan was not working, the outside air temperature was approximately 100 degrees Fahrenheit. *See* Dkt. 1 at 25; Dkt. 10 at 7. He also asserts that he was denied the respite area "at times" and that "they very seldom ran cool down shower." Dkt. 1 at 25. As a result of being exposed to the heat due to his broken fan, Lozano claims that he suffered from headaches, nosebleeds, weakness, nausea, his body "locking up," and thoughts of suicide due to the heat. Dkt. 1 at 25; *see also* Dkt. 10 at 7.

In a Grievance Investigation Worksheet dated October 16, 2019, Officer Jefferson provided the following statement in response to Lozano's August 26 complaint that he needed an indigent fan because the fan given to him by a property officer had stopped working: "At the time of this incident offender had been given two fans. Due to fan shortage no fans were available. However since then the offender has been given a third fan." Dkt. 34-1 at 296.

On October 9, the unit was going through its semi-annual shakedown and each inmate had to take his property to the West Gym for inspection. Dkt. 1 at 26; Dkt. 10 at 9. Lozano's property was inspected by Garza, Jones, and Jefferson, who told him that they were "going to have to confiscate your legal and religious material."[3] Dkt. 1 at 27; *see also* Dkt. 10 at 9–11. According to TDCJ records, because Lozano had not requested a legal storage container or to utilize the extra

---

[3] Lozano identifies as a Muslim who studies the religion of Islam. Dkt. 13 at 8.

4/ 27

storage space in his cell for his legal materials, his property was stored improperly pursuant to policy AD-3.72. *See* Dkt. 34-1 at 305, 310, 312. The defendants confiscated Lozano's property, including his kufi (a religious prayer cap), Quran, prayer rug, religious papers, and religious books and magazines. Dkt. 1 at 29; Dkt. 10 at 9–12; Dkt. 13 at 7. They gave him a Prop-8 form that stated that his property was taken for being in excess. Dkt. 13 at 5, 7; Dkt. 34-1 at 310, 312.  According to Lozano, Jefferson and Jones told him that he would not "be able to practice law as long as you are on this unit or practice your religion as long as you are here." Dkt. 1 at 27, 29; Dkt. 10 at 10–11; Dkt. 17 at 2–3. After Lozano's property was verified, it was returned to him on October 18. *See* Dkt. 1 at 29; Dkt. 13 at 6, 8; Dkt. 34-1 at 310. The same day, Lozano requested a legal storage container from the unit's access-to-courts supervisor. *See* Dkt. 34-1 at 305.

On October 24, Lozano "was called out by Captain Jones who investigated a grievance I wrote on him." Dkt. 13 at 9. Lozano questioned why Jones was investigating the grievance when Jones was the subject of the grievance, and Jones told Lozano that Assistant Warden Gordon told him to investigate. *Id.* The pleadings are not clear, but it appears that Lozano then filed a grievance about Assistant Warden Gordon because Gordon had instructed Jones to investigate a grievance that was about Jones. *Id.*; *see also* Dkt. 10 at 14 and Dkt. 1 at 31. Lozano also states that he wrote Collier "a few letters letting him know that [Gordon] is violating my rights by letting Jones investigate the situation I wrote him up for."

Dkt. 1 at 31; Dkt. 10 at 14.

On January 6, 2020, Assistant Warden Gordon, Jones, and two other TDCJ officers performed a shakedown of Lozano's cell based on receiving an anonymous tip via an I-60 request that Lozano possessed dangerous contraband.[4] Dkt. 1 at 31; Dkt. 10 at 13; Dkt. 34-1 at 325, 330. A search of Lozano's cell yielded no dangerous contraband, but "nuisance contraband"—non-dangerous contraband that Lozano was not permitted to possess—was found. *See* Dkt. 34-1 at 325, 326, 328, 329, 330; *see also* Dkt. 1 at 31; Dkt. 10 at 14; Dkt. 13 at 11. Any items for which Lozano was unable to produce proof of purchase or property papers for was confiscated. Dkt. 34-1 at 325, 328, 329, 330. Among several other items, Gordon confiscated Lozano's religious materials, including his kufi and Quran. Dkt. 1 at 31–32; Dkt. 10 at 15; Dkt. 13 at 10. Two weeks later, Lozano's radio, kufi, and headphones were returned to him, but his other property that had been confiscated—included his Quran—was not returned and he was told that the property had been "destroyed."

---

[4] In their summary-judgment motion, the defendants assert that "records demonstrate that Jones was not present during the cell search." Dkt. 34 at 15. The records cited by the defendants, however, do not appear to be conclusive on the issue. *See* Dkt. 34-1 at 323–30. As part of TDCJ's investigation into Lozano's grievance complaining about the search and confiscation of his property on January 6, Jones provided a statement stating that a search occurred of Lozano's cell on January 6, 2020, and that Lozano's property was confiscated because he did not have proof of purchase and he was indigent. *See id.* at 326. Jones does not state that he was not present at the search. *See id.* As will be discussed later in Part C.2., however, it ultimately does not matter whether Jones took part in the cell search on January 6 because the court concludes that Lozano's free-exercise rights were not violated during the search and confiscation of his property on that date.

Dkt. 13 at 11. Lozano was later charged with a disciplinary case for possessing contraband. Dkt. 34-2 at 75–80. He was convicted and was punished with a 15-day loss of recreation and a 15-day loss of commissary. *Id.*

### B. Procedural Posture

Lozano filed this action on March 31, 2020, alleging that the defendants violated his constitutional rights.[5] Dkt. 1 at 17. Specifically, Lozano alleges that: (1) Jefferson and Jones were deliberately indifferent to his health and safety in violation of the Eighth Amendment when they refused to provide him with a fan when the temperature was over 100 degrees Fahrenheit; (2) Jefferson, Jones, Garza, and Gordon retaliated against him for exercising his constitutional rights by taking his property on October 9 during the unit shakedown and on January 6 during his cell shakedown; and (3) Garza, Jones, and Jefferson violated his First Amendment right to practice his religion by taking his religious materials on October 9, 2019, and Gordon and Jones violated his First Amendment right to practice his religion by taking his religious materials on January 6, 2020.

Lozano seeks compensatory, punitive, and nominal damages. *See* Dkt. 1 at 8, 10; Dkt. 26 at 2.

After screening Lozano's pleadings as required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court ordered Jefferson,

---

[5] At the court's request, Lozano filed several more definite statements of his claims. *See* Dkts. 10, 13, 17.

Jones, Garza, and Gordon to answer. Dkt. 18. In the same order, the court dismissed TDCJ Executive Director Bryan Collier as a defendant. The court did not order service on defendants Stanley Obiakor or Juwan Robbins.

In August 2022, Jefferson, Jones, Garza, and Gordon filed a motion to dismiss, which was opposed by Lozano. Dkts. 25, 26. The court granted the motion in part and denied it in part. Lozano's claim for monetary damages against the defendants in their official capacities was dismissed with prejudice and the retaliation claim against Garza was dismissed with prejudice for failure to state a claim. Dkt. 27. In all other respects, the motion to dismiss was denied, leaving the following claims: (1) the Eighth Amendment claims against Jefferson and Jones; (2) the First Amendment free-exercise claims against Jones, Jefferson, and Gordon; and the (3) the First Amendment retaliation claims against Jones, Jefferson, and Gordon. The court also dismissed Lozano's claims against Obiakor and Robbins pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

The remaining defendants now move for summary judgment on the remaining claims, arguing that the claims are without merit and that they are entitled to qualified immunity. Dkt 34. Lozano has not filed a response to the summary-judgment motion.

## II.   STANDARDS OF REVIEW

### A.   Motion for Summary Judgment Under FRCP 56

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). The initial burden falls on the movant to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). The non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). "Conclusory allegations" or

"unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment . . . ." *Smith v. Reg'l Trans. Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quotation omitted). Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Further, a court need not comb the record to find evidence that will permit a non-movant to survive summary judgment. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary-judgment record.  *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citations omitted).

Although Lozano is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *Martin v. Harrison*

*Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam). Even a *pro se* plaintiff must specifically refer to evidence in the summary-judgment record to place that evidence properly before the court. *See EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se pleadings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence . . . .") (cleaned up).

## B.   Qualified Immunity

The defendants have invoked the defense of qualified immunity, which protects government officials acting within the scope of their authority from personal liability for monetary damages under certain circumstances. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In reviewing a motion for summary judgment based on qualified immunity, [courts] undertake a two-step analysis." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *rev'd on other grounds*, 577 U.S. 7 (2015). "First, [courts] ask whether the facts, taken in the light most favorable to the plaintiffs, show the officer's conduct violated a federal constitutional or statutory right." *Id.* (citations omitted). "Second, [courts] ask 'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)).

Under the first prong, a court decides "whether the facts that a plaintiff has

11/ 27

alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the second prong, the court asks "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Officials who act reasonably, but mistakenly, are still entitled to the defense. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citation omitted). Qualified immunity gives ample room for mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

After an official has asserted the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *see also Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) ("A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it

to the plaintiff to show that the defense is not available.") (quoting *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)).

A reviewing court may address the two prongs of the qualified-immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson*, 555 U.S. at 236; *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

## III.   DISCUSSION

### A.   Eighth Amendment Claim

Lozano has alleged that Jefferson and Jones violated his Eighth Amendment rights by not providing him with a fan for over a month when the outside air temperature was over 100 degrees Fahrenheit. The defendants argue that there is no genuine dispute of material fact that Jefferson and Jones were deliberately indifferent to Lozano's serious medical needs because they reasonably believed, based on Lozano's property records, that he was in possession of two fans and when he complained that one of his fans was broken, Jefferson and Jones believed Lozano still had one fan to use while he waited replacement of the broken fan.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners." *Woods v. Edwards*, 51

13/ 27

F.3d 577, 581 (5th Cir. 1995) (per curiam). So long as confinement is not cruel and unusual, "restrictive and even harsh" conditions "are a part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Despite the decree that "the Constitution does not mandate comfortable prisons," prison officials must still ensure that "inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (citations omitted).

An inmate must establish two elements for a successful Eighth Amendment challenge. "First, he must demonstrate that the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (cleaned up). For this objective component, "extreme deprivations are required to make out a conditions-of-confinement claim." *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1,8 (1992)). Courts examining prison conditions must measure the conditions against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Second, an inmate must show that the defendant possessed a "sufficiently culpable state of mind." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)

(quoting *Farmer*, 511 U.S. at 834). That is, an inmate must show that the defendant was deliberately indifferent to the plaintiff's health or safety. *See id.* at 352 (citing *Farmer*, 511 U.S. at 834). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Because deliberate indifference requires knowledge of the risk, "mere negligence" does not satisfy the deliberate-indifference standard. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Extreme cell temperatures without adequate remedial measures can violate the Eighth Amendment. *See Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) ("The Eighth Amendment 'guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'") (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)); *Blackmon v. Garza*, 484 F. App'x 866, 869 (5th Cir. 2012) (per curiam) ("Allowing a prisoner to be exposed to extreme temperatures can constitute a violation of the Eighth Amendment."); *Webb v. Livingston*, 618 F. App'x 201, 207 (5th Cir. 2015) (per curiam) ("It is well established in this Circuit that exposure to extremely hot temperatures presents a

substantial risk of serious harm to inmate safety."); *Valigura v. Mendoza*, 265 F. App'x 232, 235 (5th Cir. 2008) (per curiam) ("We have held that temperatures consistently in the nineties without remedial measures, such as fans, ice water, and showers, sufficiently increase the probability of death and serious illness so as to violate the Eighth Amendment.").

The defendants' summary-judgment evidence supports that at the time he was complaining about a broken fan, Lozano's property records indicated that he was in possession of a second fan. Lozano has not pointed to any evidence in the record that contradicts the defendants' summary-judgment evidence on this point or the defendants' argument that Jefferson and Jones reasonably believed, based on his property records, that Lozano had one fan to use while he waited for replacement of the broken fan. Lozano, thus, has failed to raise a genuine issue of material fact as to whether Jefferson or Jones were aware of an excessive risk to Lozano's health or safety because he had access to only one fan for approximately one month, as well as intermittent access to the respite area and cool down showers. *See, e.g.*, *Hardwick v. Bowman*, Civil Action No. 6:21cv201, 2023 WL 4056050, at *7 (E.D. Tex. Apr. 26, 2023) (granting summary judgment in defendants' favor as to plaintiff's Eighth Amendment heat claim when the uncontested summary-judgment evident showed that the defendants employed heat-mitigation strategies and procedures), *R&R adopted by*, 2023 WL 4054687 (E.D. Tex. June 16, 2023). He has therefore failed to raise a genuine issue of

material fact as to the subjective component of a successful Eighth Amendment claim.

In sum, because Lozano fails to establish a constitutional violation, Jefferson and Jones are entitled to qualified immunity from his Eighth Amendment claim. The summary-judgment motion on this issue will be granted.

## B.    First Amendment Retaliation Claims

### 1.    Jefferson and Jones

Lozano asserts that Jefferson and Jones instructed Garza to confiscate his religious and legal materials on October 9 during the unit shakedown in retaliation for Lozano submitting grievances in September about Jefferson and Jones for not providing him with a fan and for threatening to file a § 1983 lawsuit about the issue. When confiscating his religious and legal property, Lozano asserts that the defendants told him that he "would not be able to practice [his] religion or practice law on the Stringfellow Unit" and that they took his kufi despite Lozano having property papers for it. The defendants argue that this retaliation claim must be dismissed because the defendants did not take Lozano's property for retaliatory purposes but because Lozano had excess property that he failed to properly store, and that ownership of the property needed to be verified pursuant to TDCJ policy before it was returned.

To state a claim for retaliation, a prisoner must allege (1) the exercise of a specific constitutional right, (2) the defendant's intent to retaliate against the

17/ 27

prisoner for his or her exercise of that right, (3) the defendant took a retaliatory adverse act, and (4) causation. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). "To establish an intent to retaliate, 'an inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Garner v. Moore*, 536 F. App'x 446, 450 (5th Cir. 2013) (per curiam) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (1995)). However, "[t]he mere fact that one incident precedes another is not proof of a causal connection[.]" *Morris v. Cross*, Civil Action No. 6:09cv236, 2010 WL 5684412, at *6 (E.D. Tex. Dec. 17, 2010), *R&R adopted by*, 2011 WL 346071 (E.D. Tex. Feb. 1, 2011), *aff'd*, 476 F. App'x 783 (5th Cir. 2012). Causation "requires a showing that 'but for the retaliatory motive the complained of incident . . . would not have occurred.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).

The summary-judgment evidence supports that Lozano's property was confiscated on October 9 because he had excessive property that was improperly stored in violation of prison policy. The defendants have submitted a Grievance Investigation Worksheet in which Jefferson reports that Lozano possessed excessive property during the shakedown. *See* Dkt. 34-1 at 312. Although Lozano asserts that he had property papers for his kufi and that the defendants told him that he would not be able to practice his religion or practice law, he does not dispute the defendants' contention that his materials were improperly stored. In

fact, he admits that the property was confiscated using an excess property "Prop 8" form.  Here, Lozano has not presented facts that show that there is a genuine issue concerning the causation element for a successful retaliation claim. That is, Lozano has not shown that, but for the alleged retaliatory motive, his property would not have been seized.  *See Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008) (per curiam) (affirming district court's grant of summary judgment on inmate's claim that defendants retaliated against him by confiscating his property because the summary-judgment evidence indicated that inmate's property was confiscated because it was in excess of prison regulations); *Puckdeesri v. Lopez*, 110 F. App'x 396, 397 (5th Cir. 2004) (per curiam) (affirming trial court's dismissal of inmate's claim that defendants had illegally confiscated and destroyed his property in retaliation when inmate did not show "that his property was not seized and destroyed for the legitimate reasons given in the confiscated property form, *i.e.*, that the property was improperly stored in excessive amounts and because the property had to be given to a visitor within 60 days or it would be destroyed"); *Cross*, 2010 WL 5684412, at *9 (granting summary judgment in defendants' favor as to inmate's retaliation claim when the summary-judgment evidence showed that that the inmate's property was confiscated because it was in excess of prison regulations). The defendants' motion for summary judgment is granted as to this claim.

19/ 27

2. <u>Gordon</u>

Lozano asserts that Gordon performed a shakedown of his cell on January 6 in retaliation for Lozano submitting grievances about Gordon, Jones, and Jefferson; for writing a letter to Collier about Gordon; and for threatening to file a lawsuit about Gordon. The defendants argue that this retaliation claim must be dismissed because Lozano's cell was searched based on an anonymous tip that Lozano had dangerous contraband in his possession and that Lozano's personal items were confiscated because he was not able to produce ownership papers for those items, not because of a retaliatory motive.

The summary-judgment evidence supports that Lozano's cell was searched on January 6 because prison authorities received an anonymous tip via I-60 that Lozano possessed dangerous contraband. *See* Dkt. 34-1 at 325. Although no dangerous contraband was found, the defendants did find several items of "nuisance" contraband—that is, items that were not dangerous but that Lozano was not unauthorized to possess. The summary-judgment evidence further supports that Lozano's property was confiscated because he possessed items which are not allowed, items that were altered, and items that he could not show proof of purchase or property papers. *See id.* at 325, 327–29; Dkt. 34-2 at 75–84. Lozano has not pointed to specific facts in evidence that show that there is a genuine issue concerning the causation element for a successful retaliation claim. In other words, Lozano has not shown that, but for the alleged retaliatory motive, his property

would not have been seized. *See Leggett*, 277 F. App'x at 500 (affirming district court's grant of summary judgment on inmate's claim that defendants retaliated against him by confiscating his property because the summary-judgment evidence indicated that inmate's property was confiscated because it was in excess of prison regulations); *Puckdeesri*, 110 F. App'x at 397 (affirming trial court's dismissal of inmate's claim that defendants had illegally confiscated and destroyed his property in retaliation when inmate did not show "that his property was not seized and destroyed for the legitimate reason given in the confiscated property form, *i.e.*, that the property was improperly stored in excessive amounts and because the property had to be given to a visitor within 60 days or it would be destroyed"); *Cross*, 2010 WL 5684412, at *9 (granting summary judgment in defendants' favor as to inmate's retaliation claim when the summary-judgment evidence showed that that the inmate's property was confiscated because it was in excess of prison regulations). The defendants' motion for summary judgment is granted as to this claim.

### C.    First Amendment Free-Exercise Claims

"[I]nmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela*, 684 F.3d 564, 571–72 (5th Cir. 2012) (quoting *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995)). "This approach ensures the ability of corrections officials to anticipate security problems and to adopt

innovative solutions to the intractable problems of prison administration, and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349–50 (1987) (internal quotation marks and citations omitted). Thus, "[a] restriction impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *McFaul*, 684 F.3d at 572 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)). Valid penological objectives include deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone* v, 482 U.S. at 348. A prison regulation may be struck down only if its relationship to the penological interest is "so remote as to render the policy arbitrary or irrational." *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 861 (5th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)).

In considering whether a restriction is reasonable, courts consider the following factors, first set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987): (1) "whether the regulation is 'rationally related' to a legitimate penological goal"; (2) "whether alternative means of exercising First Amendment rights remain open"; (3) "the impact that accommodating the asserted right will have on other prisoners and prison employees"; and (4) "whether there are easy and obvious alternative means of accommodating the asserted right." *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (citation omitted). The first *Turner* factor is the controlling question, and the remaining factors "are best

22/ 27

understood as indicators of rationality." *Id.* at 215 (5th Cir. 2012) (citing *Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77, 81 (5th Cir. 1992)). "[P]rison officials are entitled to substantial deference in the exercise of their professional judgment, and it is an inmate's burden to prove that a prison policy, as applied, is not reasonably related to legitimate penological objectives." *DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022) (per curiam) (cleaned up).

### 1.    October 9 incident

Lozano has alleged that Garza, Jones, and Jefferson violated his First Amendment right to practice his religion by taking his religious materials on October 9, 2019, during the unit shakedown. The defendants assert that Lozano's property was confiscated because he had excessive property that was not properly stored and, that after the property was inspected, all of it was returned to Lozano. The defendants further assert that Lozano's "materials were confiscated pursuant to a legitimate penological purpose, specifically the security interest in protecting the prison facility from contraband, ensuring inmates possess only their own property, and providing reasonable storage limitations based on finite space in prison." Dkt. 34 at 14.

The record supports the defendants' account that Lozano had excess property that was improperly stored and therefore subject to confiscation pursuant to prison policy. The court finds that the first *Turner* factor weighs in favor of the defendants because the temporary confiscation of excess property for inspection

23/ 27

and verification of ownership is reasonably related to the legitimate government interests asserted by the defendants: namely, protecting the prison facility from contraband, ensuring inmates possess only their own property, and providing reasonable storage limitations based on finite space. *See, e.g., Sawyer v. Jones*, No. 2:08-cv-186, 2008 WL 4791557, at \*5 (N.D. Tex. Oct. 31, 2008) (observing that policy of allowing inmates to retain only those commissary items for which their legitimate ownership can be verified by recent commissary receipts is rationally related to the legitimate governmental security interest in controlling trafficking and trading among inmates); *Arrendondo v. Brooks*, No. 3:11-cv-704, 2013 WL 5949612, at \*9 (D. Nev. Nov. 5, 2013) (granting summary judgment in defendant's favor on inmate's free-exercise claim that several of his religious books were confiscated because prison policy of requiring inmates to write their names in their books was reasonably related to the prison's interests of keeping contraband from inmates and limiting an inmate's personal property to that which he rightfully owns); *Wood v. Yordy*, No. 1:07-cv-00350-EJL, 2012 WL 1252989, at \*11 (D. Idaho Mar. 30, 2012) (observing that a "temporary restriction on [the inmate]'s religious practice was reasonably related to legitimate penological interests, because of the need for the ongoing investigation").

The other three factors also weigh in the defendants' favor. Lozano does state whether he requested any alternative means of exercising his religion—for example, by accessing religious reading material through the prison chaplain—and

he does not provide any information about the impact that accommodation of his asserted constitutional right would have on staff, other inmates, and prison resources.

In short, Lozano has failed to show that the policy of verifying property ownership and the policy against excess property are not rationally related to any penological interest. Lozano has put forth no argument rebutting the defendants' qualified immunity defense. The summary-judgment motion on this issue will be granted.

### 2.    January 6 incident

Lozano has alleged that the confiscation of his religious items, including his Quran and kufi, by Gordon and Jones on January 6, 2020, violated his First Amendment rights. The defendants claim that Lozano's property was properly confiscated because he was unable to produce ownership papers for the unauthorized property. The defendants further assert that "[p]rison officials conducted a search and confiscated property pursuant to a valid penological purpose, the security interest in protecting the prison facility from contraband, enforcing property ownership, and providing reasonable storage restrictions." Dkt. 34 at 15.

The summary-judgment record supports the defendants' account that Lozano had property that he was not able to produce ownership papers or proof of purchase, thus making the items contraband subject to confiscation. *See* Dkt. 34-1

25/ 27

at 325, 326, 328, 329, 330; Dkt. 34-2 at 75–80. The court finds that the first *Turner* factor weighs in favor of the defendants because the confiscation of contraband property is reasonably related to the legitimate government interests of protecting the prison facility from contraband, enforcing property ownership, and providing reasonable storage limitations. *See, e.g., Sawyer*, 2008 WL 4791557, at *5 (observing that policy of allowing inmates to retain only those commissary items for which their legitimate ownership can be verified by recent commissary receipts is rationally related to the legitimate governmental security interest in controlling trafficking and trading among inmates); *Arrendondo*, 2013 WL 5949612, at *9 (granting summary judgment in defendant's favor on inmate's free-exercise claim that several of his religious books were confiscated because prison policy of requiring inmates to write their names in their books was reasonably related to the prison's interests of keeping contraband from inmates and limiting an inmate's personal property to that which he rightfully owns).

The court again finds that the other three factors weigh in the defendants' favor. Lozano does state whether he requested any alternative means of exercising his religion and he does not provide any information about the impact that accommodation of his asserted constitutional right will have on staff, other inmates, and prison resources.

Lozano has failed to show that the confiscation of contraband property is not rationally related to any penological interest. Lozano has put forth no argument

26/ 27

rebutting the defendants' qualified immunity defense. The summary-judgment motion on this claim will be granted.

\* \* \*

For the reasons stated above, the court **ORDERS** as follows:

1.  The motion for summary judgment, Dkt. 34, filed by Tammie Jefferson, Leonard Jones, Shawn Garza, and Feliz Gordon is **GRANTED**. Lozano's claims against these defendants are **DISMISSED with prejudice.**

2.  Any and all other pending motions are **DENIED as moot**.

3.  This case is **DISMISSED with prejudice**.

The Clerk shall provide a copy of this order to the parties.

Signed on Galveston Island this  26th  day of  September         , 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

27/ 27